John NICHOLAS, Trustee, Appellant,

v.

PETER PAN SNACK SHOP, Inc., and Lanrose, Inc., Appellees.

No. 16690.

United States Court of Appeals
Fifth Circuit.

June 5, 1958.

Irving M. Wolff, Miami, Fla., for appellant.

Richard P. Kenney, Miami, Fla., Milton E. Grusmark, Sibley, Grusmark, Barkdull & King, Miami Beach, Fla., for appellees.

Before RIVES, TUTTLE and CAMERON, Circuit Judges.

CAMERON, Circuit Judge.

This appeal is from an order of the District Court granting the petition of appellees, Peter Pan Snack Shop, Inc., and Lanrose, Inc. to review, and reversing, an order of the referee in bankruptcy which required appellee Lanrose to turn over and pay to appellant John Nicholas, Trustee of Bill's Sandwich Shop Restaurants, Inc., Bankrupt, a deposit of twenty-four thousand dollars held by Lanrose in connection with a lease of premises by it to Peter Pan which were subleased to Bill's. The referee had held in a summary proceeding that this twenty-four thousand dollars had been deposited with Lanrose by Peter Pan as security for the payment of rent on said premises, and that the trustee's claim to the fund was superior to that of Lanrose and Peter Pan.

The District Court reversed the order of the referee upon the holding that he was without power or jurisdiction to adjudicate the rights of the parties in a summary proceeding; and it ordered that a judgment affecting this fund and obtained by Peter Pan in a state court proceeding be honored and enforced as against the trustee. By this appeal the trustee challenges the correctness of this order of the District Court. We find it

necessary to state the facts of this involved case in some detail.

The twenty-four thousand dollars was deposited with Lanrose by Peter Pan in connection with a ten year lease contained in an original lease of October 14, 1952, as supplemented by an "addenda" and a rider executed between then and March 12, 1953. The premises were occupied by Peter Pan as a restaurant until November 16, 1953, when it sold out to the corporation subsequently becoming the bankrupt, which took over as sublessee the leased premises together with Peter Pan's right and interest in the twenty-four thousand dollar deposit. The bankrupt assertedly executed a mortgage to Peter Pan to secure an indebtedness of $234,740.72. This instrument is not in the record but, presumably, it included all of the physical property used in the restaurant, together with the leasehold rights of Peter Pan and the fund which secured the lease.

September 23, 1955, the bankrupt filed a Plan of Arrangement under Chapter 11 of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., and December 2, 1955, the referee approved the plan of arrangement. The bankrupt found itself unable to discharge its obligations under the plan, and it was adjudicated bankrupt May 18, 1956, and appellant John Nicholas was appointed receiver, and subsequently he became trustee.

The bankrupt had continued to occupy the leased premises and to operate its restaurant and to pay rent to Lanrose until May 29, 1956, when the bankrupt was notified in writing by Lanrose that the lease was canceled because of the bankruptcy. On June 28th, Lanrose rented the premises under substantially identical terms to Woody's Restaurant, Inc.

June 19, 1956, the referee entered an order requiring all secured lien-holders forthwith to file with the trustee the exact amounts of their respective claims and a list of the securities held by them. July 5th, the trustee filed a petition for recission of the lease with Lanrose and the return of the twenty-four thousand dollar security deposit; and he proceeded to take the depositions of Morris Lansburgh, owner of the stock of Lanrose, and Meyer Yedlin, who, with his family, owned ninety percent of the stock of Peter Pan and all of the stock of Woody's Restaurant, Inc.

September 25, 1956, Peter Pan filed with the referee a petition for an order allowing it to proceed with a foreclosure sale under the state court judgment it had obtained. The petition set up that Peter Pan held a mortgage executed by the bankrupt covering, among other things, "all the leasehold interest, estate, term of years yet to come and unexpired, property, possession, security, claim and demand whatsoever, as well in law or in equity, in and to the property and premises described" in the Lanrose-Peter Pan lease; that on April 26, 1956, one Chris Carson, president of Peter Pan (who had signed the original Lanrose lease on its behalf) had instituted mortgage foreclosure proceedings in a Florida State Court which had resulted, July 26, 1956, in a summary final decree of foreclosure in favor of Peter Pan and covering the deposit here in controversy. The petition further averred that the trustee was a co-defendant in said suit with Peter Pan, and a copy of the summary final decree was made an exhibit to the petition.[1]

1. Pertinent provisions of the decree are these:

"This cause came on regularly to be heard *upon plaintiff's* [Chris Carson] *motion for summary final decree, and upon motion of the defendant and counterclaimant, Peter Pan Snack Shop, Inc.,* for summary final decree. In consideration of the pleadings, affidavits and arguments of respective counsel, the Court finds that there is no genuine issue as to any material fact and said *defendant and counterclaimant* is entitled to summary final decree as a matter of law. It is thereupon Ordered, Adjudged and Decreed:

"(1) That plaintiff's motion for summary final decree is hereby denied.

"(2) That the motion of the defendant and counterclaimant, Peter Pan Snack Shop, Inc., for summary final decree is hereby granted.

Said petition of September 25th recited that Peter Pan's lien, which the Florida Court ordered enforced, was a fourth lien, being subject to a first lien in favor of the landlord Lanrose for unpaid rentals, to a second lien represented by chattel mortgage to secure $43,680.00 in favor of Bramlett Equipment & Supply Company, Inc., and a third lien represented by chattel mortgage held by Chris Carson to secure an indebtedness of $33,579.28. Lanrose and Bramlett were not parties to the state court suit.

Thereafter on October 24, 1956, Peter Pan and Lanrose filed with the referee a joint "Response to the Petition for Rescission of Lease and Return of Security Deposits filed herein by John Nicholas as Trustee * * *" In this response they set up the lease between Lanrose and Peter Pan and referred to the $24,000.00 fund as having been paid to lessor "as security for the prompt performance by the lessee of the terms, conditions, covenants and agreements contained in said leases," quoting also a portion of one of the lease documents in which the deposit was described as constituting "liquidated and agreed upon damages." The response then recited that, on November 16, 1953, Peter Pan sold its restaurant business to Bill's and "assigned and transferred all its leasehold interest as lessee under said lease, including all rights of the lessee in and to the security deposit of $24,000.00." It averred that simultaneously Bill's executed to Peter Pan a chattel mortgage upon all of the property conveyed. It thereupon recited that Bill's had failed to pay Lanrose the April 1, 1956 rental of $2,208.32 and a like sum due May 1; that Bill's had failed to pay certain installments due Peter Pan under the mortgage indebtedness.

The response thereupon described the state court proceedings brought by Chris Carson, and asserted that the trustee's right to the $24,000 was subject and inferior to the mortgages of Peter Pan and Chris Carson; and set up that Lanrose was entitled to recover rent for one year succeeding the date of surrender of the premises by the trustee; and it prayed that the referee determine and adjudicate the rights of the parties and permit foreclosure under the final decree in the state court proceeding.[2]

Based upon these documents and the testimony of Messrs. Yedlin and Lansburgh, the referee ordered Lanrose to turn over the security deposit to the trustee, and permitted Peter Pan to foreclose

---

* * * * *

"(4) * * * and that said defendant and counterclaimant has a valid and enforceable first lien superior in rank and dignity to any right, title, interest, lien claim or demand of all other parties to this cause, and all persons claiming by, through, under or against them, against all the property and premises involved in this cause * * *." [Emphasis supplied.]

The judgment was in a suit shown by its caption to have been brought by Chris Carson against Peter Pan, Bill's Sandwich Shop Restaurants, Inc., and John Nicholas as Trustee; and it proceeded to appoint a special master to conduct a sale of all of the property covered in the lease.

2. The last two paragraphs in the joint response are in these words:

"(8) That under the express provisions of the Bankruptcy Acts, Lanrose, Inc., as lessor under the terms of the leases aforesaid, is entitled to the recovery of an amount equal to the rent and reserved by said leases, without acceleration, for the year next succeeding the date of surrender of the demised premises by the Trustee in Bankruptcy to said lessor, namely, the sum of $26,499.84, and is entitled to retain said security deposit of $24,000.00 in partial payment of such indebtedness. Moreover, the said lessor is entitled to recovery of the unpaid rents accrued to the date of adjudication, in the further sum of $4,416.64.

"Wherefore, in consideration of the premises, Peter Pan Snack Shop, Inc. and Lanrose, Inc. respectfully pray that the petition of the Trustee in Bankruptcy may be denied, and *that the Court will determine and adjudicate their respective rights, liens and priorities in and to said security deposit*, and that the Petition for Order Allowing Mortgage Foreclosure Sale Under Final Decree heretofore filed herein by Peter Pan Snack Shop, Inc. *may be reconsidered by the Court and granted*." [Emphasis added.]

its state court judgment as to all property covered by its mortgage except the leasehold interest, including the security deposit here in litigation.[3]

The District Court reversed and set aside the referee's order, along with all injunctive orders restraining the prosecution to final determination of the state court proceeding. It based its opinion largely on the fact that the "$24,000 leasehold security deposit" had at all times been in the possession of Lanrose and not in the possession of the bankruptcy court, and that appellees had not consented to a determination of their rights by the referee, and that the referee was therefore without jurisdiction to adjudicate their rights.[4]

 Taking up first the claim of Lanrose, we are of the opinion that the

3. The basis for the referee's finding is set forth in these paragraphs from his order:

"From the evidence and the testimony and the exhibits adduced at the hearings it appears that the bankrupt, through its trustee, after learning that a new lease was instituted by and between Lanrose, Inc. and the alter ego of Peter Pan Snack Shop, Inc., to-wit: Woody's Restaurants, Inc., a Florida corporation, renounced the executory contracts of leases and demanded a return of the security deposit held by the said Lanrose, Inc. Lanrose, Inc. admitted, through its President, that it suffered no monetary loss by reason of the adjudication, and it further admitted the execution of a new lease replacing the old leases with the said Woody's Restaurants, Inc.

"From the briefs filed and the arguments presented by counsel for the respective parties it appears that the true contest in issue in the instant matter is the attempt by Meyer Yedlin, the alter ego of Peter Pan Snack Shops, Inc. and Woody's Restaurants, Inc., inferior lienholders, to obtain the benefit of the security deposit of $24,000 through the guise of an assignment, and thus denude the bankrupt estate of a valuable asset. The expression of counsel for Peter Pan Snack Shop, Inc. that it is an assignee of said sum is untenable, and not supported by the facts, nor is it deductible from the applicable law involved.

"This Court is fully familiar with the proceedings in the State Court and the outcome of the chattel mortgage foreclosure proceedings therein instituted, in that the said Peter Pan Snack Shop, Inc. has filed its Petition with this Court for an order allowing it to proceed with the State Court sale, which is to be held by the Special Master in Chancery duly appointed by the Chancellor in the State Court case.

"Under the prevailing sections of the National Bankruptcy Act and the appropriate law of the State of Florida thereto appertaining, the Court is of the opinion that inasmuch as Lanrose, Inc. suffered no loss whatsoever by virtue of the rescission of the executory contracts of the leases by the said trustee, and further that the said Lanrose, Inc., prior to said rescission, did re-occupy the premises involved and did enter into a new lease, and it further appearing that this Court has jurisdiction over the subject matter and the parties, and the bankrupt having been an assignee of the said security deposit in the amount of $24,000, this said sum is an asset of the said bankrupt estate and should therefore be forthwith turned over to the said trustee. * * *"

4. This quotation from the order of the court below epitomizes the grounds of its holding:

"* * * the Court finds that the property involved in this matter, namely, the $24,000.00 leasehold security deposit, at all times has been in the possession of the Bankruptcy Court. The lessor, *Lanrose, Inc., claims ownership of the security deposit. Peter Pan Snack Shop, Inc. claims a mortgage lien against the security deposit* superior in rank and dignity to any rights of the trustee in bankruptcy. * * * None of these adverse claimants consented to determination of their rights to the security deposit by the Referee in summary proceedings. On the contrary, they objected and insisted upon an adjudication in plenary proceedings.

"The Court is of the opinion and concludes as a matter of law that the Referee was without power, authority, or jurisdiction to adjudicate summarily the rights, title and claims to property not in the actual or constructive possession of the Bankruptcy Court when the lessor and mortgagee asserted bona fide claims to such property adverse to the trustee in bankruptcy; that these adverse claimants were entitled to have the merits of their respective claims adjudicated in plenary proceedings; * * *." [Emphasis added.]

referee correctly decided this issue and that the District Court committed error in reversing his order that the money be turned over to the trustee. The rule governing the right and duty of the referee to inquire into the status of property claimed by the bankrupt and third persons was well stated by this Court, citing many authorities, in B. F. Avery & Sons Co. v. Davis, 5 Cir., 1951, 192 F. 2d 255, 259, certiorari denied 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703:

"This question has most often arisen in the so-called 'turn over orders', but its answer in general depends on whether the property sought to be recovered was actually held in possession by or for the bankrupt at bankruptcy, or was held by an adverse claimant under a claim not merely colorable. Where a controversy arises as to whether there is such an adverse claim, the rule is that the referee can summarily enquire into it, and if it clearly appears that possession was in or for the bankrupt, and the adverse claim or right is only colorable, he may make a judgment accordingly, but if there be a possession before bankruptcy that was really adverse and asserted in good faith, the referee may not adjudge its merits, but the trustee must seek relief by a plenary suit. * * * " 5

In connection with this rule ought to be considered the recent amendment to the Bankruptcy Law putting an end to the controversy as to what constituted consent on the part of adverse claimants to the summary jurisdiction of the referee.[6] Congress has now provided:[7] " * * * where in a controversy arising in a proceeding under this title an adverse party does not interpose objection to the summary jurisdiction of the court of bankruptcy, by answer or motion filed before the expiration of the time prescribed by law or rule of court or fixed or extended by order of court for the filing of an answer to the petition, motion or other pleading to which he is adverse, he shall be deemed to have consented to such jurisdiction; * * * ". And cf. Nicholas v. Cohn, 5 Cir., 255 F.2d 301.

■ Under these rules, considered together or separately, we think that the referee did have jurisdiction of the Lanrose claim, and we agree with the conclusion of the District Court that the status of this security fund was established by written instruments and undisputed testimony. The three writings constituting the lease agreement between Lanrose as landlord and Peter Pan as tenant occupied forty pages in the record and a detailed examination of the provisions is not necessary. It is true, as argued by Lanrose, that the fund was referred to in the writings at several places as "liquidated and stipulated damages". But looking to all of the provisions of the three writings and to applicable Florida decisions,[8] it is clear that the fund was deposited with Lanrose only as security for performance of the contract on the part of the lessee. Near the beginning of the first writing the fund is nominated "security for the payment of the rent reserved by this lease, and also as security for the performance by the lessee of the covenants, conditions and agreements set forth in the lease. * * * " Lessor also agreed to pay interest to lessee on the "said security monies" and to refund the money to the lessee upon the conclusion of the lease "if the said lessee has fully

5. And in Maule Industries, Inc., v. Gerstel, 5 Cir., 1956, 232 F.2d 294, 298, we said, citing authorities: "But the mere assertion of an adverse claim does not oust a court of bankruptcy of its jurisdiction. * * * It has both the power and the duty to examine a claim adverse to the bankrupt estate to the extent of ascertaining whether the claim is ingenuous and substantial. * * * "

6. And cf. Footnote 14 infra.

7. 11 U.S.C.A. § 11, subdivision a(7).

8. Stenor, Inc., v. Lester, Fla.1951, 58 So. 2d 673, and Kaplan v. Katz, Fla.1952, 58 So.2d 853.

complied with, kept and performed each and every the terms, covenants and conditions of this lease * * *." 9

Lanrose canceled the lease by letter dated May 29, 1956, addressed to Bill's and to the trustee, which letter first refers to the instruments constituting the lease between it and Peter Pan and its understanding "that the lessee's interest in this lease has been assigned by Peter Pan Snack Shop, Inc. to Bill's Sandwich Shop Restaurants, Inc., which corporation is the owner of the lessee's interest in each of said leases." The letter thereupon points out that Bill's had been adjudicated bankrupt on May 18th, and concludes with these words of cancellation: "Each of the aforedescribed leases contains a provision conferring upon the lessor the option to terminate each lease and re-enter upon the property *in the event of an adjudication of bankruptcy and in the event of the appointment of a receiver. Both contingencies have occurred. We hereby elect to terminate both leases under the clauses conferring this option upon us.* Effective immediately upon receipt of this notice, you are a tenant at sufferance. We propose to apply to the referee in bankruptcy for an order directing the surrender of possession of these premises." [Emphasis added.]

The rights of the parties are fixed by this cancellation notice. Godchaux Sugars, Inc., v. Meridian Wholesale Co., 5 Cir., 1923, 289 F. 359, 365. The reasons there given reject the argument made by Lanrose—manifestly in an effort to bring the cancellation under subparagraph (f), Footnote 9, supra—that the cancellation was for nonpayment of rent. In fact, the pleading filed before the referee by Lanrose quoted in Footnote 2, supra, shows that it filed claim in the Bankruptcy Court for two months rent it claimed to be unpaid.

The evidence is undisputed, however, that all rents had been paid and that Lanrose suffered no monetary loss from the vacating of the premises following the bankruptcy of Bill's, and the new lease made by Lanrose with Woody's was secured by a personal guaranty on the part

---

9. The third writing forming part of the lease agreement contains these provisions:

"(b) The said security payment is security which the Lessee has given unto the Lessor for the performance by the Lessee of all of the terms, conditions, covenants and agreements in the within lease and in the basic lease contained by the Lessee to be kept and performed * * *. The said sum is not rent and it will never be applied as rent and the Lessee will never have the power to compel the Lessor to apply it or any part of it as rent.

&ast; &ast; &ast; &ast; &ast;

"(d) If the lease is canceled or terminated before its expiration date and if such cancellation or termination is effected for any reason other than the default of the Lessee, then simultaneously with such cancellation or termination, the Lessor will return unto the Lessee the security payment less any sums which may be necessary to reimburse the Lessor for any damage occasioned by the failure of the Lessee, at the termination of the lease, to return them to the Lessor, in the manner and condition required by the terms of the leases.

"(e) If the lease is not canceled but runs its entire course, then, * * * the Lessor will return unto the Lessee the entire amount of the security deposit.

"(f) If the lease is canceled before what would otherwise have been its expiration date, and if such cancellation is accomplished by the Lessor because of the default of the Lessee, then the Lessor shall be entitled to retain the absolute and unconditional ownership of the entire security deposit, not as a penalty or as a forfeiture, but as liquidated and agreed upon damages for the default of the Lessee, * * *.

"(g) If the Lessee defaults, nothing herein contained shall be construed as making it obligatory upon the Lessor to cancel the lease; but the Lessor may, * * * thereupon re-enter the premises, with or without legal process, and take possession of them and rent them for the account of the Lessee; and if the Lessor elects to do so, then the Lessor shall retain possession of the security deposit until what would have been but for such default the expiration date of the term, and at that time the Lessor will then account to the Lessee for any rents which the Lessor has been able, through such re-letting, to receive during such balance of the term * * *."

of Meyer Yedlin which Lanrose apparently found adequate and satisfactory. In fact, a careful reading of the joint response to the trustee's petition for return of the security deposit filed by Lanrose and Peter Pan discloses no direct claim that Lanrose was entitled to retain the security deposit, although it does quote a portion of the lease characterizing it as liquidated damages. On the other hand, said joint response prays only that Lanrose be awarded by the referee the unpaid rent and rent for a year succeeding the surrender of the premises, and it places its chief claim to relief upon the mortgage held by Peter Pan. From all of this it is clear that Lanrose had no real claim to the security deposit, but merely a colorable claim, and this fact became apparent to the referee when he summarily inquired into it as was his duty under the authorities mentioned supra.

It is apparent, moreover, that under the test now contained in the bankruptcy law, Lanrose consented to a disposition of its claim in the summary proceeding. It is true that before the referee entered his order, the attorneys for Lanrose had filed a written brief in which they argued that the referee was without summary jurisdiction. The argument cannot, however, supplant the pleadings already on file wherein, as above shown, Lanrose did not object to the jurisdiction of the referee, but affirmatively prayed that the referee adjudicate its rights. The conclusion of the District Court that Lanrose did not consent to the referee's

jurisdiction, quoted in Footnote 4 supra, does not find support in the record, particularly in view of the quoted amendment to the Bankruptcy Acts and its congressional history referred to in Footnote 14 infra.

■ With respect to the claim of appellee, Peter Pan Snack Shop, Inc.,[10] the referee evidently was of the opinion that an illicit "squeeze" had been engineered by the agents of Peter Pan by which, as the arguments seemed to concede, Woody's Restaurants, Inc. had obtained "the benefit of the security deposit of $24,000 through the guise of an assignment, thus denuding the bankrupt estate of a valuable asset." This conclusion was based apparently upon the finding that Peter Pan's mortgage was a fourth lien, that the state court suit was brought against Peter Pan by its president, that Meyer Yedlin, owner of Peter Pan, bought the properties of the bankrupt at the trustee's sale for a nominal sum and continued to operate the restaurant formerly operated by Peter Pan by the expedient of organizing a wholly owned corporation known as Woody's Restaurants, Inc.; and that Peter Pan and Lanrose, having palpably adverse claims to the security deposit, made common cause in their joint claim before the referee. Such a conclusion involved "piercing the corporate veil" and looking through form to the substance of the transactions.[11]

The District Court did not, in its order of reversal, advert to these conclusions of the referee, basing its decision

10. The trustee moved to strike Peter Pan's petition for review because it was not filed within ten days as required under Title 11 U.S.C.A. § 67, sub. c, and argues earnestly before us that we should hold that the referee's decision on Peter Pan's claim should be affirmed because of the admitted tardiness of the petition for review. We are not much impressed with Peter Pan's argument before us that it can "ride the coattails" of Lanrose which did file its petition for review in time. This is true both because the claims of Lanrose and of Peter Pan were adverse to each other, and because Peter Pan in its petition for

review covered the case completely without adopting or in any way referring to the petition of Lanrose.

The District Court ignored this question entirely and we assume that it did so in the exercise of its discretion to consider the petition for review notwithstanding it was admittedly filed out of time. Cf. Oppenheimer v. Oldham, 5 Cir., 1949, 178 F.2d 386, 390, and Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 152–153, 63 S.Ct. 133, 87 L.Ed. 146.

11. Cf. Ramey v. Koons, 5 Cir., 1956, 230 F.2d 802, and Maule Industries, Inc., v. Gerstel, supra.

rather upon the fact of Peter Pan's mortgage and the state court proceedings which it considered to be determinative of the rights of the trustee as against Peter Pan's claim.[12] The mortgage to which the court refers is not in the record and apparently was not properly before the trial court.[13] Nor do we find sufficient in the record concerning the state court proceeding to justify the holding of the court below with respect to it. The record contains only a copy of the summary final decree, which shows the parties to the proceeding only in its caption. The decree recites, footnote 1 supra, that the cause was heard by the state court *upon Chris Carson's motion for final decree and upon the motion of defendant and counterclaimant Peter Pan for a like final decree.* There is nothing to indicate whether the pleadings embraced any issues between Peter Pan and the trustee, or what those issues were, or what disposition, if any, was made of them.

The referee had, in his order, stressed the fact that "Chris Carson sought to foreclose his mortgage in the State Court, and failed to obtain the permission of this Court to institute the proceeding."

Moreover, Peter Pan filed with the referee its petition for an order permitting foreclosure sale under the state court decree and it also joined with Lanrose, in responding before the referee to the trustee's petition for return of the security deposit and in asking affirmative relief based upon the several grounds set forth in said response which were unrelated to the state court proceedings, without interposing objection to the summary jurisdiction of the Court of Bankruptcy.[14]

We do not think the record reflects a sufficient showing before either the referee or the District Court concerning the claim of Peter Pan as against the claims of the other lienholders and of the trustee representing all of the creditors of the bankrupt. With the $24,000 in the hands of the trustee, the referee will be in a position, upon a full hearing, to settle the equities between all of the parties and determine the true impact of the state court proceedings and of the other questions above discussed, including whether Peter Pan consented to the referee's jurisdiction; his conclusions being subject, of course, to review by the District Court and by this Court upon appeal.

12. Following is a portion of the court's order: "The lessor, Lanrose, Inc., claims ownership of the security deposit. Peter Pan Snack Shop, Inc. claims a mortgage lien against the security deposit superior in rank and dignity to any rights of the trustee in bankruptcy. This mortgage lien is evidenced by a chattel mortgage given and recorded some two and one-half years prior to adjudication of bankruptcy and its validity is not challenged. Prior to the adjudication of bankruptcy, suit was instituted in the State Court seeking foreclosure of a mortgage lien against the security deposit and a final decree of foreclosure has been entered therein. The Trustee in Bankruptcy was a party to such State Court litigation in which adversary proceedings were had in respect to the rights, title, claims and demands of the respective parties."

13. The clerk of the court below recited in the record that, "said mortgage does not appear in the file as ever having been filed and for that reason is omitted from this appeal record."

14. See quotation supra from 11 U.S.C.A. § 11, subdivision (7), and see also the comments on this amendment to bankruptcy procedures by House Report No. 2320 on S 2334, 82nd Congress, Second Session (1952), which referred to the Supreme Court case of Cline v. Kaplan, 1944, 323 U.S. 97, 65 S.Ct. 155, 89 L. Ed. 97, and stated: "This holding has unsettled sound procedure and an expeditious administration in bankruptcy * * *. The proposed amendment is intended to overcome this unsatisfactory situation and is keyed to rule 12(h) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which require the timely interposition of an objection to jurisdiction and, if not so made, the defense is deemed waived." 1954 Collier, Pamphlet Edition, Bankruptcy Act, p. 14.

And see generally 1 Collier on Bankruptcy, 14th Ed., pp. 131, 133, 145, 147, and 152; 2 ib. p. 437; and 9 ib. pp. 51, 53, 54–55, and 58.

**358**

The order of the District Court reversing that of the referee requiring Lanrose to turn the security fund over to the trustee is reversed and that of the referee is affirmed; and the order of the referee and that of the District Court with respect to the claim of Peter Pan are vacated; and the cause is remanded to the District Court to be by it referred back to the referee for proceedings consistent with this opinion.

Reversed and remanded.