393 F.Supp. 798 (1975)
In re KIRK KABINETS, INC., also d/b/a Alco Cabinets, Inc., Bankrupt.
J. L. LEACH, Trustee, Appellee,
v.
J. Clyde ALLEY and R. William Steltemeier, Jr., Appellants.
No. 2498.
United States District Court, M. D. Georgia, Albany Division.
March 18, 1975.
*799 E. Lewis Adams, Albany, Ga., for Kirk Kabinets.
Donald D. Rentz, Albany, Ga., for trustee.
Jerome L. Kaplan, Adams, O'Neal, Hemingway, Kaplan, Stone & Brown, Macon, Ga., James W. Lincoln, III, Nashville, Tenn., for J. Clyde Alley and R. William Steltemeier, Jr.
OWENS, District Judge:
Appellants R. W. Steltemeier, Jr. (Steltemeier) and J. Clyde Alley (Alley) have appealed to this court pursuant to Rule 801, Rules of Bankruptcy Procedure, the turnover order of the bankruptcy judge dated August 9, 1974, directing Steltemeier to pay over to the trustee of the bankrupt, Kirk Kabinets, Inc. (Kirk), the sum of $14,112.00.

I. BACKGROUND.
Kirk was adjudged a bankrupt on October 15, 1973, subsequent to the creditors' filing of an involuntary petition on September 28, 1973. The funds which are the subject of the turnover order were paid to Novice Cole (Cole) by Alley pursuant to an agreement and were deposited to the account of Alco Cabinets, Inc. (Alco). Thereafter, Alley received $34,000 from this account on or about August 10, 1973. Of these funds, $25,799.00 were transferred to appellant Steltemeier's law firm. The bankruptcy court issued the turnover order after finding, inter alia, that Alley, as sole shareholder and personal guarantor of Kirk's indebtedness totaling $300,000.00, transferred $150,000.00 derived from an assignment of Kirk's accounts receivable to Alco. Alco and Kirk were found to be indistinguishable entities, said deposit being a contribution to Kirk's capital structure. These funds were to be used to revitalize Kirk and were carried under Alco's name to avoid garnishment and attachment by Kirk's creditors. The subsequent transfer of these funds resulted in their possession by Kirk's agents, the Steltemeier firm being determined by the court to be Kirk's attorney. Upon the Steltemeier firm's inability to consistently establish disbursements of the funds and because the court awarded no attorneys' fees, the court thereafter entered its order.
*800 Appellants pray that this court reverse the bankruptcy court, contending that the court's finding that the trustee established a prima facie case for issuance of a turnover order is contrary to the law and the evidence.

II. THE PRIMA FACIE CASE.
An appropriate point of beginning for consideration of appellants' contention is the United States Supreme Court decision in Maggio v. Zeitz, 333 U.S. 56, 68 S.Ct. 401, 92 L.Ed. 476 (1948), wherein the Court stated:
"The turnover procedure is one not expressly created or regulated by the Bankruptcy Act. It is a judicial innovation by which the court seeks efficiently and expeditiously to accomplish ends prescribed by the statute, which, however, left the means largely to judicial ingenuity.
"The courts of bankruptcy are invested `with such jurisdiction at law and in equity as will enable them' to `cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto . . ..' Title 11 USCA § 11(a)(7), [3 FCA title 11,] § 11(a)(7) and the function to `collect and reduce to money the property of the estates' is also laid upon the trustee.
"11 USCA § 75(a)(1), [3 FCA title 11,] § 75(a)(1). A correlative duty is imposed upon the bankrupt fully and effectually to turn over all of this property and interests, and in case of a corporation the duty rests upon its officers, directors or stockholders. 11 USCA § 25, [3 FCA title 11,] § 25.
* * * * * *
"[T]he trustee, as well as the Court, is commanded to collect the property. The Act vests title to all property of the bankrupt, including any transferred in fraud of creditors, in the trustee, as of the date of filing the petition in bankruptcy, 11 USCA § 110, [3 FCA title 11,] § 110, which puts him in position to pursue all plenary or summary remedies to obtain possession.
"To entertain the petitions of the trustee the bankruptcy court not only is vested with `jurisdiction of all controversies at law and in equity' between trustees and adverse claimants concerning property acquired or claimed by the trustee, 11 USCA § 46, [3 FCA title 11,] § 46, but it also is given a wide discretionary jurisdiction to accomplish the ends of the Act, or in the words of the statute to `make such orders, issue such process, and enter such judgments, in addition to those specifically provided for, as may be necessary for the enforcement of the provisions of this title.' 11 USCA § 11(a)(15), [3 FCA title 11,] § 11(a)(15).
"In applying these grants of power, courts of bankruptcy have fashioned the summary turnover procedure as one necessary to accomplish their function of administration. It enables the court summarily to retrieve concealed and diverted assets or secreted books of account the withholding of which, pending the outcome of plenary suits, would intolerably obstruct and delay administration. When supported by `clear and convincing evidence,' the turnover order has been sustained as an appropriate and necessary step in enforcing the Bankruptcy Act. (citations omitted)
"But this procedure is one primarily to get at property rather than to get at a debtor. Without pushing the analogy too far, it may be said that the theoretical basis for this remedy is found in the common law actions to recover possession  detinue for unlawful detention of chattels and replevin for their unlawful taking  as distinguished from actions in trespass or trover to recover damages for the withholding or for the value of the property. Of course the modern remedy does not exactly follow any of these ancient and often overlapping procedures, but the object  possession *801 of specific property  is the same. The order for possession may extend to proceeds of property that has been disposed of, if they are sufficiently identified as such. But it is essentially a proceeding for restitution rather then indemnification, with some characteristics of a proceeding in rem; the primary condition of relief is possession of existing chattels or their proceeds capable of being surrendered by the person ordered to do so. It is in no sense based on a cause of action for damages for tortious conduct such as embezzlement, misappropriation or improvident dissipation of assets.
"The nature and derivation of the remedy make clear that it is appropriate only when the evidence satisfactorily establishes the existence of the property or its proceeds, and possession thereof by the defendant at the time of the proceeding.

* * * * * *
"It is evident that the real issue as to turnover orders concerns the burden of proof that will be put on the trustee and how he can meet it.

"This Court has said that the turnover order must be supported by `clear and convincing evidence,' Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 174, 73 L.Ed. 419, [13 Am Bankr NS 121], and that includes proof that the property has been abstracted from the bankrupt estate and is in the possession of the party proceeded against. It is the burden of the trustee to produce this evidence, however difficult his task may be." 333 U.S. at 61-64, 92 L.Ed. at 482-484, 68 S.Ct. at 404. (emphasis added).
From the foregoing, it is evident that the trustee must prove the existence of three conditions for issuance of a turnover order:
(1) the property in question is in the actual or constructive possession of the bankruptcy court, thereby invoking its summary jurisdiction;
(2) the property in question is such property as vests in the trustee by virtue of section 70a of the Bankruptcy Act; and
(3) the property in question was and has continued to be in the possession and control of the defendant up to and including the time of the order. See 2 J. Moore, Collier on Bankruptcy ¶ 23.10[2] (14th ed. 1972).

A. Summary Jurisdiction.

Generally the trustee must establish summary jurisdiction by showing that the property was actually held in possession by or for the bankrupt at the time of bankruptcy, or was held by one under a claim which is merely colorable and not adverse. Where an adverse claim is asserted in good faith, the trustee must seek relief by plenary action. See Nicholas v. Peter Pan Snack Shop, 256 F.2d 349 (5th Cir. 1958); B. F. Avery & Sons v. Davis, 192 F.2d 255 (5th Cir. 1951), cert. denied, 342 U.S. 945, 72 S.Ct. 559, 96 L.Ed. 703.
In the case sub judice, no objection was raised by appellants to the bankruptcy court's exercise of summary jurisdiction. Because of the appellants' failure to interpose objection to the summary jurisdiction of the court below either by answer or by motion, appellants consented to the bankruptcy court's exercise of summary jurisdiction. Accordingly, appellants cannot by their belated objection raise this contention on appeal.

B. Property of the Bankrupt.

It appears that the crux of appellants' appeal rests upon the allegedly erroneous determination by the bankruptcy court that the funds in question constituted a part of Kirk's estate. Appellants assert that the bankruptcy court erroneously determined that the funds were derived from assignment of Kirk's accounts receivable and that the Steltemeier firm was attorney for Kirk. The appellants maintain that the funds were Alley's personal funds, paid to Cole pursuant to a *802 trust agreement, and returned to Alley upon Cole's breach. Appellants further assert that the bankruptcy court erred in determining Alco and Kirk to be one and the same entity. It is the appellants' contention that these funds were never part of Kirk's assets and therefore were not subject to the court's turnover order.
In reviewing findings, this court is bound by the bankruptcy court's determinations unless they are clearly erroneous. Rule 810, Rules of Bankruptcy Procedure. A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. United States v. United States Gypsum Co., 333 U.S. 364, 68 S.Ct. 525, 92 L.Ed. 746 (1947). This court finds that on the basis of the record before it, the court's finding that the funds were derived from a sale of Kirk's accounts receivable is clearly erroneous. However, the court's finding that the Steltemeier firm represented Kirk is not clearly erroneous. While the record reveals that at some later point in time the Steltemeier firm did represent Alley personally, there is substantial evidence to support the court's findings. In reviewing this finding, due deference must be given to the court's opportunity to consider the credibility of witnesses. Rule 810, Rules of Bankruptcy Procedure.
The appellants next contend that these funds were Alley's personal funds, paid to Cole pursuant to a trust agreement, and accordingly, never became a part of Kirk's assets. While the record reveals that the funds came from Alley's personal account, this court finds that upon payment to Cole these funds ceased being the personal property of Alley. No valid trust was established by the exchange. An express trust is defined by the Restatement (Second) of Trusts § 2 (1959), as a "fiduciary relationship with respect to property, subjecting the person by whom the title to the property is held to equitable duties to deal with the property for the benefit of another person, which arises as a result of a manifestation of an intention to create it." This is the common definition.
The indicia of such a trust relationship are not present in this case. There is no indication that Cole assumed any equitable duties to handle any trust funds for Alley's benefit, that is to deal with the property for the benefit of Alley as the authorities define the relationship. The agreement was essentially a contract whereunder Cole assumed certain of Kirk's indebtedness in return for a stated consideration, leaving Cole to use the funds as he wished. There is thus no indication that Alley intended to impose, or that Cole intended to assume the fiduciary relationship. Cole's obligation under the contract was to hold Alley harmless from any of Alley's personal guaranty agreements. Accordingly, this court is convinced that these funds became the personal property of Cole to be used as he wished. Whether Cole's employment of these funds resulted in their becoming a part of Kirk's assets is another issue for consideration.
The bankruptcy court concluded and appellants agree that the funds were deposited to Alco's account in the First State Bank in Albany, Georgia. The bankruptcy court concluded that Alco and Kirk were inseparable entities, which conclusion the appellants challenge. To the extent the bankruptcy court rested this determination on the basis of the court's amendment to the bankrupt's caption to read "Kirk Kabinets, Inc. d/b/a Alco Cabinets, Inc.," such basis is utterly without foundation in law, and accordingly lends no support to the court's determination.
The recognized standard for "piercing the corporate veil" was set forth in Maule Industries v. Gerstel, 232 F.2d 294 (5th Cir. 1956), wherein the court stated:
"Courts are reluctant to pierce the corporate veil and destroy the important fiction under which so much of the business of the country is conducted, and will do so only under such *803 compelling circumstances as require such action to avoid protecting fraud, or defeating public or private rights." (citations omitted).
"[4, 5] The burden in this case is upon Maule to establish by pleadings and proof that Ludwig Bros., Inc. is `an artifice and a sham designed to execute illegitimate purposes in abuse of the corporate fiction and the immunity that it carries.' Coryell v. Phipps, 5 Cir., 1942, 128 F.2d 702, 704. Mere identity of corporate names, stockholders and officers of [sic] the fact of ownership of capital stock in one corporation by another are not sufficient to justify disregarding the corporate fiction." (citations omitted).
"[6] The factors commonly considered as requisite to establish that one corporation is an instrumentality of another for purpose of a turnover of its assets to the trustee in bankruptcy are well expressed in Fish v. East, 10 Cir. 1940, 114 F.2d 177, 191.2 Moreover, the petition and the proof must show that the corporation whose property is sought to be brought into the bankruptcy proceeding was organized or used to hinder, delay or defraud the creditors of the bankrupt, and constitutes mere `legal paraphernalia' observing form only and not existing in substance or reality as a separate entity." Id. at 297.
2. "`(1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.'"
Though cognizant of the court's hesitancy to disregard the corporate fiction, application of the above-cited principles to the facts in this case convinces this court that Alco and Kirk were not separate and distinct legal entities, but rather were inseparable. Alco was a sham organized when Kirk was deeply insolvent by Novice Cole who was Kirk's manager and who held an option to purchase Kirk. Alco's exclusive aim was the maintenance of Kirk's operations  completion of Kirk's unfinished cabinet contracts then in default  in an effort to alleviate Kirk's dire financial situation and thus avoid bankruptcy. Approximately $120,000 of the funds were used to pay certain contractors doing business with Kirk. Collections received from these contracts were applied to Kirk's secured creditors. Alco assumed those facilities which had been previously utilized by the then defunct Kirk including Kirk's building, machinery, inventory, and employees. By continuing Kirk's business through the guise of Alco, Cole immunized the funds from the legitimate claims of Kirk's creditors. On the basis of the record, this court is left with the inescapable conclusion that Alco had no separate identity apart from Kirk, but rather the two were indistinguishable. Moreover, Alco was created and used for the purpose of delaying, hindering, and defrauding Kirk's creditors. In short, the record clearly reflects that Alco was the agency, instrumentality, adjunct, or alter ego of Kirk. Alco and Kirk being indistinguishable entities, the funds deposited to Alco's account were properly determined by the bankruptcy court to be a part of Kirk's assets. The subsequent transfer of $34,000 of these funds to Alley did not alter the fact that these funds were assets of Kirk. Accordingly, these funds sought by the trustee were the *804 proper object of the bankruptcy court's turnover order.

C. Possession of the Bankrupt's Property.

Appellants contend that the trustee failed to establish possession of the property in appellants. The United States Supreme Court in Maggio, supra, acknowledged that the trustee initially may be aided by a presumption or inference of present possession arising from proof of actual possession at an earlier time. However, the Court stated that a turnover order should not issue based upon a presumption of possession "unless the time element and other factors make it a fair and reasonable inference."
The record in the instant case amply supports the conclusion that the property in question was in the appellants' possession during the months of June, July and August, 1973. The crucial question is whether this possession can support a finding of possession on August 9, 1974, the date of the turnover order.
Looking to the record as a whole, the court finds the inference of possession on August 9, 1974, to be warranted not merely by prior possession. Less than one year has lapsed since the funds came into appellants' possession. The appellants emphatically deny that any of said funds remain in their possession, yet in explaining that all of these funds have been disbursed, they either intentionally or by inexcusable neglect failed to consistently show that these funds were expended. Different sets of figures representing disbursements were presented, and appellants left unexplained and unaccounted for the sum of $14,112.00. Under these circumstances this court finds that the inference of present possession is fair and reasonable.
Where the trustee has shown that the funds are in the possession or control of appellants, the burden of going forward to explain then rests upon the appellants. Oriel v. Russell, 278 U.S. 358, 49 S.Ct. 173, 73 L.Ed. 419 (1929); Bass v. Hutchins, 417 F.2d 692 (5th Cir. 1969). It is only necessary that the appellants make some reasonable showing that he no longer has possession. The appellants failed to make such a showing, but preferred to rest upon their sworn denials. The appellants' sworn denials of possession were not conclusive upon this issue. See 2 J. Moore, Collier on Bankruptcy, ¶ 23.10[2] (14th ed. 1972). In view of the foregoing, this court finds that the bankruptcy court correctly concluded that the appellants still had possession of the funds sought by the turnover order.

III. CONCLUSION.
For the reasons set forth above, the decision of the bankruptcy court is affirmed.